UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
AT CINCINNATI

**JERMAINE CLARDY**,
    Petitioner,

vs.

**WARDEN, LEBANON
CORRECTIONAL INSTITUTION**,
    Respondent.

Civil Action No. 10-414

Bertelsman, J.
Wehrman, M.J.

### REPORT AND RECOMMENDATION[1] THAT THIS PETITION FOR A WRIT OF HABEAS CORPUS BE DENIED

In June 2010 petitioner Jermaine Clardy, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 3. In September 2010 respondent filed a return of the writ [Doc. 10], and petitioner filed his traverse (i.e., reply) in November 2010. Doc. 15. Consistent with local practice, the matter has been referred to the undersigned for initial consideration and a report and recommendation pursuant to 28 U.S.C. § 636(b).

**I. Factual and Procedural Background**

As related by the opinion of the First District of the Ohio Court of Appeals, the relevant underlying facts are as follows:

> Defendant-appellant Jermaine Clardy shot and killed his friend Victor Smith after Smith punched out the rear passenger window of Clardy's sport utility vehicle ("SUV"). Clardy claimed self-defense, testifying that he was in fear for his life. The jury did not believe him. Clardy was convicted of murder and an accompanying gun specification. The trial court imposed a prison term of 18 years to life and ordered post-release control. . . .

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

{¶ 2} The following facts are undisputed and supported by the testimony of Clardy and Michael Clay, the state's witness. In the early morning hours of June 12, 2005, Clay, Clardy, and Smith, childhood friends, were together on a street in the Walnut Hills neighborhood of Cincinnati, drinking gin.

{¶ 3} Clay and Smith had arrived in Clay's SUV, and Clardy had arrived in his SUV. Throughout the evening, Clardy kept his car keys in his pants pocket. While drinking on the street, Clardy received a phone call from Charles Edwards. At some point, Smith spoke to Edwards on the phone and began to argue with him over a recent falling out. Smith finished the conversation with Edwards, but then began accusing Clay and Clardy of taking Edwards's side. Clardy and Clay testified that Smith was very angry and that they were both trying to calm him down. But then Smith began to challenge both Clardy and Clay to fight.

{¶ 4} When Clay refused to fight Smith, Smith threw a bottle of gin at the window of Clay's SUV. The bottle shattered the window. Clay, upset about the damage to his SUV, told Smith that he was leaving him there and drove off. When Clardy did not follow him, Clay returned to the two men, parked on the other side of the street, and watched the remaining events. Clay testified that when he returned, Clardy was sitting in his SUV with the driver's door open and that Smith was between the door and Clardy.

{¶ 5} Clardy testified that Smith had challenged him to fight but that he had refused. Then Smith walked behind Clardy's SUV to the rear passenger window and began punching it in an effort to break the window. Clardy said that because he felt he was personally being attacked when Smith began punching the SUV window, he grabbed his gun, got out, and walked around the front of the car. Clardy testified that Smith began to approach him. Although Clardy said that he did not believe that Smith had a gun and that he had not noticed any weapons, he thought that Smith might have had something in his hand, because the hand that Smith had used to break Clardy's window was wrapped in a shirt.

{¶ 6} So Clardy shot Smith three times. Clardy and Clay then left the scene. Smith died later that morning.

{¶ 7} Edwards, the man who had made the telephone call to Clardy earlier in the night, testified that Clardy had called him and told him that he had shot Smith three times because Smith had broken one of the windows of his SUV.

{¶ 8} The police contacted Clardy the next day on his cellular phone. John Horn, a Cincinnati homicide detective, testified that during that phone conversation, when Horn told Clardy that he was a suspect in Smith's death, Clardy never mentioned that he had shot Smith in self-defense. Although Horn asked Clardy to turn himself in, he did not. Four months later, Clardy was apprehended while

2

living under an alias.

*State v. Clardy*, 2007 WL 2332350, at * 1-2 (Ohio Ct.App. Aug. 17, 2007).

In his direct appeal, petitioner raised three issues: "(1) he was improperly sentenced to post-release control; (2) his trial counsel was ineffective; and (3) his conviction was unsupported by the weight and the sufficiency of the evidence." *Id.* at *2. In August 2007 the First District Court of Appeals overruled petitioner's ineffective assistance of counsel and sufficiency of the evidence arguments but agreed that the trial court erred by sentencing petitioner to post-release control. Thus, the matter was remanded to the trial court for re-sentencing.[2] *Id.* at *3.

Petitioner did not file a timely appeal to the Ohio Supreme Court. Instead, in October 2007 petitioner filed a motion for leave to file a delayed appeal. Doc. 10-1, p. 57. The Ohio Supreme Court granted petitioner's motion for delayed appeal in December 2007. *Id.* at p. 70. In his delayed appeal, petitioner raised two issues. Petitioner first argued that:

> WHERE TRIAL COUNSEL FAILS TO RAISE PROPER OBJECTIONS TO MULTIPLE LEADING QUESTIONS BY THE PROSECUTOR AND TO THE INTRODUCTION OF NON-PROBATIVE AND UNDULY PREJUDICIAL WITNESS TESTIMONY, AND FAILS TO REQUEST JURY INSTRUCTIONS ON APPLICABLE LESSER-INCLUDED OFFENSES, SUCH COUNSEL FAILS TO MAKE THE ADVERSARIAL TESTING PROCESS WORK AT TRIAL AND IS CONSTITUTIONALLY INEFFECTIVE.

*Id.* at p. 75. Second, petitioner argued:

> WHERE THE EVIDENCE IN A CRIMINAL CASE IS INSUFFICIENT TO PROVE EACH ESSENTIAL ELEMENT OF THE CHARGED OFFENSE BEYOND A REASONABLE DOUBT, A RESULTING CONVICTION VIOLATES DUE PROCESS OF LAW.

*Id.* at p. 79. In April 2008, the Ohio Supreme Court dismissed the appeal "as not involving any

---

[2]On re-sentencing, the trial court deleted the post-release control portion of the judgment but petitioner's prison term remained unchanged. Doc 10-1, p. 54-56.

3

substantial constitutional question." *Id.* at p. 89.

Meanwhile, shortly before he filed his motion for belated appeal to the Ohio Supreme Court, petitioner filed an application to reopen his appeal in the First District Court of Appeals pursuant to Ohio Rule of Appellate Procedure 26(B). *Id.* at p. 90. In his application to reopen his direct appeal, petitioner contended that his appellate counsel was ineffective for failing to argue that petitioner: 1)was "denied due process of law by prosecutorial misconduct in closing arguments"; 2) the trial court gave an improper jury instruction on "purpose"; and 3) "the trial court erred by instructing the jury that it had to find appellant 'guilty or innocent', depriving appellant of due process of law." *Id.* at p. 90-100 (emphasis omitted). In January 2008, the First District Court of Appeals denied petitioner's application to reopen his appeal on *res judicata* grounds. *Id.* at p. 110-111.

Petitioner appealed the denial of his application to reopen his direct appeal to the Ohio Supreme Court. *Id.* at p. 112. Petitioner raised five issues. First, he argued that *res judicata* did not apply to an application to reopen which was filed prior to an appeal to the Ohio Supreme Court. Second, he argued that appellate counsel is ineffective if he "overlooks significant and obvious issues of constitutional magnitude in favor of weaker arguments . . . ." *Id.* at p. 114 (emphasis omitted). Third, he argued that his due process rights were violated "wher [sic] a prosecutor argues facts not in evidence and makes material misstatements of law to the jury that affect the fairness of the proceedings . . . ." *Id.* (emphasis omitted). Fourth, petitioner argued that his due process rights were violated "where a supplemental jury instruction creates a permissive presumption that lowers the government's burden of proof . . . ." *Id.* (emphasis omitted). Finally, petitioner argued that "instructing a jury to find a defendant 'guilty or

4

innocent' rather than 'guilty or not guilty' undermines the government's burden of proof and violates due process of law." *Id.* (emphasis omitted).

In April 2008, the Ohio Supreme Court accepted the appeal on petitioner's first argument ( *res judicata*) and stayed the case pending the decision in a similar case. *Id.* at p. 129. In December 2008, the Ohio Supreme Court reversed, pursuant to *State v. Davis*, 894 N.E.2d 1221 (Ohio 2008),³ and remanded the case to the First District Court of Appeals. Doc. 10-1, at p. 130.

In May 2009, the First District Court of Appeals again denied petitioner's motion to reopen, concluding that he had "failed to sustain his burden of demonstrating a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel on appeal." *Id.* at p. 133. Petitioner once again appealed to the Ohio Supreme Court. *Id.* at p. 134. Petitioner argued: 1) appellate counsel was ineffective for overlooking stronger constitutional issues in favor of weaker arguments; 2) due process is violated "where a prosecutor argues facts not in evidence and makes material misstatements of law to the jury"; 3) due process is violated "where a supplemental jury instruction creates a permissive presumption that lowers the government's burden of proof"; and 4) due process is violated when a jury is instructed to find a defendant guilty or innocent instead of guilty or not guilty. *Id.* at p. 136 (emphasis omitted). In August 2009, the Ohio Supreme Court dismissed petitioner's appeal "as not involving any substantial constitutional question." *Id.* at p. 150.

---

³In *Davis*, the Ohio Supreme Court held that the filing of a motion seeking discretionary appeal in the Ohio Supreme Court does not bar the Court of Appeals from ruling on the merits of a timely filed application to reopen an appeal based on a claim of ineffective assistance of counsel. 894 N.E.2d at 1222.

In June 2010, petitioner filed the § 2254 petition at hand. Petitioner raises six grounds for relief. First, he contends that his counsel was ineffective "for not requesting a[n instruction on a] lesser-included offense rather than murder." Doc. 3, p. 7. Second, petitioner argues that there was "[n]o evidence" that he had "an intent to kill." *Id.* at p. 8. Third, petitioner argues that his appellate counsel was ineffective for "overlook[ing] significant and obvious issues of constitution[al] magnitude in favor of weaker arguments . . . ." *Id.* at p. 10. Fourth, petitioner argues that his right to due process was violated when "[t]he prosecutor told the jury that purpose was not in question despite the fact that it was the only element in question." *Id.* at p. 11. Fifth, the petitioner argues that his right to due process was violated when the trial court gave a jury instruction that purportedly "lower[ed] the Government's burden of proof . . . ." *Id.* at p. 13. Finally, petitioner argues that "[i]nstructing a jury to find a Petitioner 'guilty or innocent' rather than 'guilty or not guilty' undermines the government's burden of proof and violates due process of law. (The trial court should have responded that the Petitioner has no burden of proof.)" *Id.*

In September 2010, respondent filed a return of writ. As will be discussed more fully later in this report and recommendation, respondent contends that petitioner's fourth, fifth and sixth grounds for relief have been procedurally defaulted. Doc. 10, p. 15. I agree. I also agree with respondent that petitioner's first three grounds for relief are without merit.

**II. Analysis**

**A. Standard of Review**

The standard of review of a § 2254 petition depends upon whether the claim was adjudicated on the merits in state court. If the claim was adjudicated on the merits, a court should grant a habeas petition only if:

6

>the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts.

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003).

A different standard applies to claims which were not adjudicated on the merits by state courts (i.e., procedurally defaulted claims):

>When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review. A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case.

*Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (internal citations omitted). A claim is procedurally defaulted if a habeas petitioner has "failed to comply with a state procedural rule that is applicable to the petitioner's claim" and "the state courts actually enforced the procedural rule in the petitioner's case; and . . . the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis*, 351 F.3d at 744.

Some of petitioner's claims have been procedurally defaulted but others have not. Thus, the standard of review will be different for the procedurally defaulted claims. *See, e.g., Seymour*, 224 F.3d at 555-56 (reviewing non-procedurally defaulted claims on their merits while applying procedural default rules to defaulted claims).

### B. Procedurally Defaulted Claims

#### 1. Ground Four

In his fourth ground for relief, petitioner argues that his due process rights were violated

7

when the prosecutor argued facts not in evidence and misstated the law to the jury. More specifically, petitioner contends the prosecutor told the jury that "purpose was not in question despite that fact that it was the only element in question."[4] Doc. 3, p. 11.

Petitioner first raised this prosecutorial misconduct claim in his Rule 26(B) motion to reopen his appeal. A Rule 26(B) motion to reopen an appeal is a collateral, post-conviction relief proceeding. *See, e.g., Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005); *State v. Darrington*, 2000 WL 1655236 (Ohio Ct.App. Oct. 27, 2000). A claim raised for the first time in a post-conviction Rule 26 motion is, thus, deemed to be procedurally barred for federal habeas purposes. *Lott v. Coyle*, 261 F.3d 594, 611-12 (6th Cir. 2001); *Stojetz v. Ishee*, 389 F.Supp.2d 858, 898-99 (S.D. Ohio 2005) ("under Ohio law, an application for reopening pursuant to App. R. 26(B) . . . is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place. . . . The notion that any constitutional claim raised in an application for reopening is fairly presented to the state courts in the same manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by case law. The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel."). Petitioner's prosecutorial misconduct claim is, thus, procedurally barred.

Petitioner has not shown that he is actually innocent. Thus, he has not shown that a miscarriage of justice will result in enforcing the procedural default. *Smith v. State of Ohio*

---

[4]Purpose was relevant in this case because petitioner was charged with murder and Ohio Revised Code § 2903.02(A) provides in relevant part that a person commits murder if he or she "shall purposely cause the death of another . . . ."

*Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 436 (6th Cir. 2006) ("Smith also cannot overcome the procedural default on his claims on the basis of a fundamental miscarriage of justice because he has not claimed, nor presented any evidence, that he was actually innocent.") (internal quotation marks omitted). Petitioner must then show both cause for the default and prejudice resulting from it. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (explaining that cause and prejudice test is conjunctive, not disjunctive).

Ineffective assistance of counsel "may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not itself procedurally defaulted." *Wilson v. Sheets*, 2008 WL 4503027, at *11 (S.D. Ohio Oct. 1, 2008) (citing *Edwards v. Carpenter*, 529 U.S. 446 (2000)). Even if it is assumed, solely for purposes of argument, that petitioner has shown cause, however, he is not entitled to relief because he has not shown prejudice. The First District Court of Appeals summarily rejected petitioner's prosecutorial misconduct arguments when it denied petitioner's Rule 26(B) motion. Doc. 10-1, at p. 132 ("The alleged prosecutorial misconduct would not have provided a basis for overturning Clardy's conviction because, on the record as a whole, the comments cannot be said to have denied him a fair trial."). Thus, counsel's failure to object to the alleged misstatements cannot be said to have caused petitioner to have suffered prejudice because the objection would not have entitled petitioner to relief. Thus, petitioner is correspondingly not entitled to habeas relief.

### 2. Ground Five

In his fifth claim for relief, petitioner argues that his due process rights were violated when the trial court gave a jury instruction that purportedly created "a permissive presumption

that lowers the Government's burden of proof . . . ." Doc. 3, p. 13. Petitioner again first raised this issue in his Rule 26(B) motion to reopen. The issue is, thus, procedurally defaulted. Since petitioner has not shown that he is actually innocent, he must satisfy the cause and prejudice test. Petitioner again cannot satisfy that test as he cannot demonstrate prejudice. In the course of denying petitioner's Rule 26(B) motion, the First District Court of Appeals held that challenged jury instruction "provided an accurate statement of the law and did not, as Clardy asserts, lessen the state's burden of proof." Doc. 10-1 at p. 132. Accordingly, petitioner is not entitled to habeas relief.[5]

### 3. Ground Six

In his sixth claim for relief, petitioner argues that "[i]nstructing a jury to find a Petitioner 'guilty or innocent' rather than 'guilty or not guilty' undermines the government's burden of proof and violates due process of law. (The trial court should have responded that the Petitioner has no burden of proof.)" Doc. 3, p. 13. Once again, petitioner first raised this issue in his Rule 26(B) motion, meaning that it is procedurally defaulted. Petitioner must satisfy the cause and prejudice test as he has not demonstrated he is actually innocent. And, once again, petitioner cannot demonstrate prejudice because the First District Court of Appeals summarily rejected this argument, holding that "[t]he court's statement, while imprecise, cannot be said to have misled the jury concerning the state's burden of proof, when that burden was accurately stated in the

---

[5] Petitioner objects to the portion of the jury instructions providing that "[i]f a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life or inflict deadly bodily harm, purpose to cause death may be inferred from the use of a weapon." Doc. 13-1, p. 91-92. The instruction at issue in the case at hand is identical to an instruction found to be proper in *State v. Levett*, 2006 WL 1191851, at *3 (Ohio Ct.App. May 5, 2006). Thus, even if petitioner's argument were to be addressed on its merits, petitioner would not be entitled to relief.

instructions and the verdict forms provided to guide the jury's deliberations." Doc. 10-1, p. 132. Accordingly, petitioner is not entitled to habeas relief.

### C. Claims Addressed on the Merits

#### 1. Ground One

In his first claim for relief, petitioner contends his trial counsel was ineffective "for not requesting a[n instruction on a] lesser-included offense rather than murder." Doc. 3, p. 7. Petitioner raised this issue in his direct appeal and then again in his appeal to the Ohio Supreme Court. Doc. 10-1, p. 21, 78. The First District Court of Appeals rejected the argument, holding:

> Finally, we will not second-guess trial counsel's strategy in not requesting instructions on lesser-included offenses of murder. Clardy chose to assert the affirmative defense of self-defense, which, if accepted by the jury, would have acquitted Clardy of murder. The substance of the claim of self-defense is that the defendant was justified in using deadly force intentionally. The assertion of self-defense is inconsistent with the claim that the defendant is guilty, at the most, of negligent homicide. The second assignment of error is overruled.

2007 WL 2332350, at * 3 (footnotes and quotation marks omitted). The Ohio Supreme Court did not substantively address the issue. Doc. 10-1, p. 89.

The First District Court of Appeals' decision is in accordance with Ohio precedent holding that a claim of self-defense is inconsistent with a jury instruction on a lesser-included homicide offense. *See, e.g., State v. King*, 484 N.E.2d 234, 236 (Ohio Ct.App. 1984); *State v. Cronin*, 2010 WL 3820598, at *9 (Ohio Ct.App. Sept. 30, 2010) ("Generally, however, an instruction on voluntary manslaughter or aggravated assault is incompatible with instructions on self-defense so that both cannot be given together."). Nonetheless, petitioner argues that a reasonable juror would have convicted him of a lesser homicide offense. However, petitioner does not show specific error in the state court's conclusion. As the Sixth Circuit held in a similar

11

case, "[s]ince a non-capital criminal defendant does not have a constitutional right to have the jury instructed on lesser included offenses, [petitioner] has not shown that the state court's determination is an unreasonable application of constitutional law to his case." *Edwards v. Mack*, 4 Fed.Appx. 215, 218 (6th Cir. 2001) (internal citation omitted). Thus, petitioner is not entitled to habeas relief on this claim.

### 2. Ground Two

In his second claim for relief, petitioner argues there was insufficient evidence to show that he had an intent to kill. A federal habeas court reviewing the sufficiency of the evidence to support a conviction must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner is entitled to habeas relief only if the Ohio Court of Appeals' denial of relief to petitioner was based on an unreasonable application of the *Jackson* standard. *Getsy v. Mitchell*, 495 F.3d 295, 315-16 (6th Cir. 2007). A state court need not cite, or even be aware of, controlling Supreme Court opinions "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Relief is not warranted if a reviewing federal court independently concludes a state court's decision was an unreasonable application of the law; instead, habeas relief is permitted only if the state court's decision is objectively unreasonable. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004).

The First District Court of Appeals rejected petitioner's claim that there was insufficient evidence to support a murder conviction, holding that "because Clardy did not prove self-defense, there was sufficient evidence to convict him of murder with a gun specification."

2007 WL 2332350, at *3.  Ohio law permits a jury to "weigh evidence and conclude from all of the surrounding circumstances that a defendant had an intention or purpose to kill where the natural and probable consequence of the defendant's act was to produce death."  26 Ohio Jur.3d *Criminal Law* § 886 (2011).

The evidence shows that petitioner shot the victim three times despite having had an opportunity to escape.  Moreover, petitioner did not believe the victim had a gun.  *Clardy*, 2007 WL 2332350, at *1, 3.  Thus, examining the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the jury's verdict, as noted by the First District Court of Appeals.  In short, petitioner has not shown how the First District Court of Appeals' conclusion that there was sufficient evidence to support petitioner's murder conviction is clearly contrary to, or is an unreasonable application of, applicable law.  Thus, petitioner is not entitled to habeas relief.

### 3. Ground Three

Petitioner's third claim for relief is his contention that his appellate counsel was ineffective for failing to raise various arguments on direct appeal, such as alleged prosecutorial misconduct, the previously discussed supplemental jury instruction, and the trial court's statement to the prospective jurors during voir dire that the jury would be finding petitioner guilty or innocent rather than guilty or not guilty.  As discussed previously, none of those issues merits habeas relief.  Thus, petitioner's appellate counsel cannot be deemed ineffective for failing to raise them.  *See, e.g., Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007) ("Counsel's failure to raise an issue on appeal, however, constitutes ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.")

(internal quotation marks omitted).

### III. Conclusion

For the foregoing reasons, it is **RECOMMENDED THAT:**

1. Petitioner's 28 U.S.C. § 2254 petition should be **denied**; and

2. A certificate of appealability should not issue with respect to any claim alleged in the petition, because no claim for relief states a "viable claim of the denial of a constitutional right" or presents issues that are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); and

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* from any Order adopting the undersigned's Report and Recommendation to deny habeas corpus relief on claims alleged in the petition, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of such Order would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

This the 1st day of June, 2011.

                                                s/ J. Gregory Wehrman
                                                J. Gregory Wehrman
                                                United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
AT CINCINNATI
CIVIL CASE NO. 10-414-WOB-JGW

**JERMAINE CLARDY**                                                      **PETITIONER**

**V.**

**WARDEN, WARREN CORRECTIONAL**
**INSTITUTION**                                                          **RESPONDENT**

## NOTICE

Attached hereto is the Report and Recommendation Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).